IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSARA INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-084-MN |
| | ) | |
| MOTIVE TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF EMERGENCY MOTION OF PLAINTIFF SAMSARA INC. FOR PRELIMINARY INJUNCTION TO ENJOIN DEFENDANT MOTIVE TECHNOLOGIES, INC. FROM PROCEEDING WITH ARBITRATION**

OF COUNSEL:
Ellisen S. Turner, P.C.
Ali-Reza Boloori
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA  90067
(310) 552-4200

Joseph A. Loy, P.C.
Joshua L. Simmons, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Jeanne M. Heffernan, P.C.
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

Dated: June 26, 2024

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
Emily DiBenedetto (No. 6779)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
(302) 298-0701
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
edibenedetto@shawkeller.com
lgellar@shawkeller.com

*Attorneys for Plaintiff Samsara Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    SUMMARY OF ARGUMENT ....................................................................................... 2

II.   NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF
      RELEVANT FACTUAL BACKGROUND ..................................................................... 2

III.  LEGAL STANDARD ..................................................................................................... 5

IV.   ARGUMENT .................................................................................................................. 5
      A.    A Preliminary Injunction Is Appropriate ............................................................. 6
            1.    Samsara Is Likely to Prevail on the Merits ............................................... 7
            2.    Samsara Will Suffer Irreparable Harm If Arbitration Proceeds ................ 12
            3.    Motive Will Not Suffer Irreparable Harm If It Is Enjoined from
                  Proceeding with Arbitration ..................................................................... 14
            4.    The Public Interest Favors a Preliminary Injunction ................................ 14
      B.    Samsara's "Participation" in the Arbitration Does Not Constitute Waiver .......... 15

V.    CONCLUSION ............................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Life Ins. Co. v. Parra,*
    25 F. Supp. 2d 467 (D. Del. 1998) ............................................................. 2, 5, 12, 14

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
    475 U.S. 643 (1986) ................................................................................... 7, 14

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995) ............................................................................................ 14

*Fortune, Alsweet & Eldridge, Inc. v. Daniel,*
    724 F.2d 1355 (9th Cir. 1983) ......................................................................... 18

*Grasso v. First USA Bank,*
    713 A.2d 304 (Del. Super. Ct. 1998) ............................................................... 10

*Greerwalker LLP v. Jackson,*
    No. 3:16-cv-235, 206 WL 3770954 (W.D.N.C. July 14, 2016) ...................... 13, 14

*Hospira Inc. v. Therabel Pharma N.V.,*
    No. 12 C 8544, 2013 WL 3811488 (N.D. Ill. July 19, 2013) .......................... 14

*Intel Corp. v. Tela Innovations, Inc.,*
    No. 3:18-cv-02848, 2018 WL 4501146 (N.D. Cal. Sept. 18, 2018) ................. 12

*Kipp v. Weyerhauser Co.,*
    354 F. Supp. 3d 622 (E.D. Pa. 2018) ............................................................... 10

*Kirleis v. Dickie, McCamey & Chilcote, P.C.,*
    560 F.3d 156 (3d Cir. 2009) ............................................................................ 10

*Law Offices of Richard E. Wilson, LLC v. Smith,*
    No. 21-17076, 2022 WL 16647769 (9th Cir. 2022) ....................................... 19

*MacDonald v. Unisys Corp.,*
    951 F. Supp. 2d 729 (E.D. Pa. 2013) ............................................................... 10

*Morgan Keegan & Co., Inc. v. Louise Silverman Tr.,*
    No. 11-2533, 2012 WL 113400 (D. Md. Jan. 12, 2012) ........................... 9, 13, 14, 15

*MZM Constr. Co. Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds,*
    974 F.3d 386 (3d Cir. 2020) ...................................................................... 7, 11

ii

*Najarro v. Superior Ct.*,
   70 Cal. App. 5th 871 (2021) ........................................................................ 8

*Ngheim v. NEC Elecs., Inc.*,
   25 F.3d 1437 (9th Cir. 1994) ..................................................................... 19

*Ohio River Valley Assoc. LLC v. PST Servs., Inc.*,
   No. 3:17-cv-00628, 2018 WL 773424 (W.D. Ky. Feb. 7, 2018) ................. 13

*PaineWebber Inc. v. Hartmann*,
   921 F.2d 507 (3d Cir. 1990) ................................................................... 5, 12

*Reilly v. City of Harrisburg*,
   858 F.3d 173 (3d Cir. 2017) ....................................................................... 7

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ..................................................................................... 8

*Rosencrans v. Dover Images, Ltd.*,
   192 Cal. App. 4th 1072 (2011) ................................................................. 11

*Singer Mgmt. Consultants, Inc. v. Milgram*,
   650 F.3d 223 (3d Cir. 2011) ....................................................................... 7

*Snow v. Eventbrite, Inc.*,
   No. 3:20-cv-03698, 2021 WL 3931995 (N.D. Cal. Sept. 2, 2021) ............ 10

*Stein v. Lee Eye Ctr., Inc.*,
   No. 2:21-cv-01730, 2021 WL 5770212 (W.D. Pa. Dec. 6, 2021) .............. 10

*Textile Unlimited, Inc. v. A..BMH & Co., Inc.*,
   240 F.3d 781 (9th Cir. 2001) ............................................................... 19, 20

*Thomas Glob. Grp., LLC v. Watkins*,
   No. 13-04864, 2014 WL 1371719 (D.N.J. Apr. 8, 2014) .......................... 10

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*,
   925 F.2d 1136 (9th Cir. 1991) ..................................................................... 8

*TRUSTID, Inc. v. Next Caller, Inc.*,
   No. 18-172, 2018 WL 6242493 (D. Del. Nov. 26, 2018) .......................... 12

*United States ex rel. Welch v. My Left Foot Childs. Therapy, LLC*,
   871 F.3d 791 (9th Cir. 2017) ..................................................................... 12

*Zirpoli v. Midland Funding, LLC*,
   48 F.4th 136 (3d Cir. 2022) ................................................................................................ 7, 9

**Rules**

Cal. Civ. Code § 1550 ........................................................................................................... 10

**\*\*All emphasis added and internal quotation marks
and citations omitted unless otherwise indicated\*\***

In an effort to thwart Samsara's constitutional right to a jury trial on its claims against Motive in this litigation and circumvent this Court's authority to decide formation issues, Motive filed a Demand for Arbitration with JAMS on each and every claim Samsara asserts here.  In support of that gambit, Motive perversely argues that its employees' fraudulent access of Samsara's platform established a binding contract and agreement to arbitrate with Motive under Samsara's Terms of Service ("TOS").  In opposition to Motive's now fully briefed motion to transfer or dismiss all claims pending before this Court, Samsara cited Supreme Court case law holding that the issue of whether a valid arbitration agreement exists is one for this Court—not the Arbitrator—to decide.  Motive subsequently conceded as much.  D.I. 42.

Notwithstanding clear law and Motive's concessions, the Arbitrator entered an order on June 18, 2024, incorrectly concluding that the issue of contract formation is for him to decide and that the parties formed an agreement to arbitrate.  Just yesterday, on June 25, JAMS contacted the parties to schedule a case management conference for as early as June 28.  Ex. 1. [1]

Despite previously acknowledging that contract formation is for this Court, not the Arbitrator, to decide, D.I. 42, Motive continues to press forward with the arbitration proceedings, flouting this Court's exclusive jurisdiction to determine whether the parties formed a valid agreement to arbitrate.  Samsara thus requests a preliminary injunction on an emergency basis to enjoin Motive from proceeding any further with the arbitration—at least until this Court decides whether a contract was formed and, if so, whether the contract includes an arbitration provision covering Samsara's claims in this matter.  Although Samsara had reasonably hoped to avoid burdening this Court with a request to enjoin the arbitration proceedings given Motive has

---

[1]    "Ex." refers to an exhibit to the Declaration of Ali-Reza Boloori submitted in support of this Answer Brief ("Boloori Decl.").

previously acknowledged that the contract formation issue is for this Court to decide, Samsara is now forced to file this emergency motion given the Arbitrator's recent decision to proceed over Samsara's jurisdictional objections.

## I.    SUMMARY OF ARGUMENT

1.    A preliminary injunction is appropriate because each preliminary injunction factor favors stopping Motive from proceeding with the arbitration.  Not only do controlling decisions demonstrate a high likelihood of success on the merits in the circumstances present here, but the Third Circuit has further held that a litigant is *per se* irreparably harmed if forced to arbitrate a matter it did not agree to arbitrate.

2.    At every step since Motive filed its Demand for Arbitration, Samsara has objected to the Arbitrator's authority to decide the issues of contract formation and arbitrability.  While Motive claims Samsara has waived its objection to arbitration by participating in the arbitration proceeding, D.I. 46, the cases (including those cited by Motive) find waiver only in circumstances not present here, *e.g.*, when the litigant failed to object and/or affirmatively pursued arbitration before reversing course in light of an adverse ruling.

3.    The appropriate remedy in these circumstances is an order enjoining Motive from proceeding in the arbitration.  *See Am. Life Ins. Co. v. Parra*, 25 F. Supp. 2d 467, 480 (D. Del. 1998) (enjoining a party from proceeding with arbitration).  Further, the Court should not require the posting of any bond, because Motive will suffer no monetary harm from this Court exercising its exclusive authority to determine whether or not an agreement to arbitrate was formed.

## II.    NATURE AND STAGE OF THE PROCEEDINGS AND STATEMENT OF RELEVANT FACTUAL BACKGROUND

On January 24, 2024, Samsara filed its original Complaint in this Court against Motive asserting claims of patent infringement, false advertising, fraud, violation of the Computer Fraud

and Abuse Act, and violation of California's Unfair Competition Law.  D.I. 1.  On February 8, 2024, Samsara filed a Complaint at the International Trade Commission ("ITC") due to Motive's infringement of the same patents asserted here through importation of the accused products.  Ex. 2. On February 15, 2024, Motive filed a retaliatory lawsuit in the Northern District of California ("NDCA").  Ex. 3.  Seeking to streamline the parties' burgeoning disputes and eliminate Motive's procedural gamesmanship, Samsara moved to transfer or, in the alternative, stay.  Ex. 4.  The NDCA has since stayed that lawsuit.  Ex. 5.  Initiating proceedings in yet another forum, Motive filed a Demand for Arbitration with JAMS on February 28, 2024, seeking to arbitrate every claim in Samsara's original Complaint.  Ex. 6.

Back in this Court, Motive moved to transfer to the NDCA or dismiss for arbitration on February 28, 2024.  D.I. 15–16.  On March 20, 2024, Samsara filed an Amended Complaint, and on April 3, 2024, Motive renewed its motion to transfer or dismiss.  D.I. 25–28.  Motive's renewed motion to dismiss incorrectly asserts that Motive's employees' fraudulent access of Samsara's platform created a binding agreement to arbitrate between Samsara and Motive.  D.I. 26 at 9.  On April 17, 2024, Samsara opposed Motive's renewed motion to dismiss, explaining that Samsara never offered its Terms of Service to competitors, Motive employees' fraudulent acts to obtain and use Samsara's products did not result in any agreement between the parties, the attendant contract formation dispute is for the Court alone to resolve, not an arbitrator, and at least Samsara's patent infringement and false advertising claims are not implicated by the TOS.  D.I. 31 at 9.  On May 31, 2024, Samsara filed a notice of supplemental authority, noting that the Supreme Court in *Coinbase, Inc. v. Suski* recently reaffirmed that a court, not an arbitrator, must resolve the issue of contract formation.  D.I. 41.  In response to Samsara's notice of supplemental authority, Motive explained that "both sides already agree: if there is an actual issue of contract formation, ***it must***

*be decided by the court*." D.I. 42. On June 4, 2024, Samsara filed a contingent motion for a stay of any claims the Court determines are subject to arbitration in light of the Supreme Court's decision in *Smith v. Spizzirri*. D.I. 43.

Meanwhile, in the ITC, Motive moved to terminate the ITC investigation for arbitration on May 1, 2024. Ex. 7. Motive initially argued that, "to the extent Samsara argues there is no valid or enforceable contract, the ***arbitrator*** must resolve this dispute." *Id.* at 9. But in its reply brief, Motive reversed course and conceded that "[the] motion turns only [on] whether a valid arbitration agreement between the parties exists" and "the lone relevant issue ***the ALJ may decide is contract formation***." Ex. 8 at 2. On June 14, 2024, the ALJ denied Motive's motion to terminate, holding there is "no valid arbitration agreement relating to the matter in dispute between the parties." Ex. 9 at 5. The ALJ reasoned that, whereas "Samsara's Terms and conditions relate to Samsara's products and services," the ITC investigation concerns "whether Motive's products infringe certain of Samsara's patents." *Id.*

On April 10, 2024, and April 17, 2024, Samsara notified JAMS of Motive's pending motions in this Court that raise formation and arbitrability issues, and informed JAMS of its objection to the arbitration proceeding before this Court rules on the threshold issues addressed therein. Exs. 10, 11. Samsara's Preliminary, Contingent Response to Motive's Arbitration Demand reserved Samsara's right to contest arbitrability and, due to the deadlines imposed in the JAMS rules, asserted contingent counterclaims to the extent arbitration did ever commence over Samsara's objection. Ex. 12. On June 18, 2024, the Arbitrator entered an order ("Arbitral Order") purporting to decide the issue of contract formation and holding that the TOS constitutes an agreement between the parties. Ex. 13. On June 19, 2024, Motive filed a Notice of Arbitration Developments, claiming this Court should transfer or stay the action pending the arbitration. D.I.

44. On June 20, 2024, Samsara filed its response. D.I. 45. Motive filed a reply to the Notice on June 25, 2024, claiming Samsara waived its objections to the arbitration by participating in the arbitration proceeding. D.I. 46 at 2. In the arbitration, Samsara filed a letter with the Arbitrator alerting him that Samsara would be moving to enjoin the arbitration proceedings in light of his clear legal error. Ex. 14. On June 25, 2024, the Arbitrator notified the parties he would hold a hearing, potentially as early as June 28, 2024. Ex. 1. Samsara files this emergency motion in response to the Arbitral Order and in light of the impending further arbitration proceedings, seeking a preliminary injunction to stop the arbitration at least until this Court resolves the issue of contract formation.

## III.    LEGAL STANDARD

The purpose of a preliminary injunction "is to preserve the status quo, not to decide the issues on their merits." *Am. Life*, 25 F. Supp. 2d at 473. When deciding a motion for a preliminary injunction to enjoin a party from proceeding with arbitration, "the court must evaluate the following four factors: (1) the likelihood that the plaintiff will prevail on the merits at the final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest." *Id.* The court shall issue an injunction "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *Id.* "If a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside of the substantive scope of the agreement, ***it is obliged to enjoin arbitration***." *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990).

## IV.    ARGUMENT

A preliminary injunction is appropriate because each preliminary injunction factor favors enjoining Motive from proceeding with the arbitration. Further, while Motive claims that Samsara

has waived its objection to arbitration by participating in the arbitration proceeding, D.I. 46, at each and every step of the arbitration, Samsara has objected to the Arbitrator's authority to decide the issues of contract formation and arbitrability, right up until the Arbitrator finally ruled that he would proceed despite Samara's objections and despite the impending rulings from this Court.

### A.    A Preliminary Injunction Is Appropriate

All four factors favor granting a preliminary injunction.  First, Samsara has a substantial likelihood of success in demonstrating what the Supreme Court and multiple Circuit Courts of Appeal have already concluded is true as a matter of law—the issue of contract formation is one for this Court to resolve.  It cannot be referred to arbitration when one party disputes whether the contract containing the alleged arbitration agreement was formed (*e.g.*, due to fraud in the execution or lack of mutual assent, both of which Samsara has alleged here).  Moreover, and although not necessary to grant this motion for preliminary injunctive relief, Samsara is also likely to succeed on its contention that no contract, and hence no valid arbitration agreement, exists between the parties due to Motive's fraud.  Second, Samsara would suffer irreparable harm if compelled to arbitrate claims where there is no valid contract containing an arbitration clause ("container contract")[2] and hence no valid arbitration agreement.  Third, Motive would not suffer any irreparable harm if enjoined from proceeding with arbitration in the absence of an agreement to arbitrate.  Indeed, the claims for which relief is sought were brought by Samsara, not Motive.  Fourth, granting a preliminary injunction is in the public's interest because this Court has not yet resolved the issue of contract formation and it is against the public interest to force arbitration of claims where there is no container contract and hence no agreement to arbitrate.  Accordingly,

---

[2] "Container contract" refers to a contract containing an arbitration clause.

Samsara's Motion for Preliminary Injunction must be granted and Motive should be enjoined from pursuing resolution of Samsara's claims against it in arbitration.

### 1.    Samsara Is Likely to Prevail on the Merits

Samsara has shown, and Motive has conceded, that this Court, not the Arbitrator, has the sole authority to decide whether a valid contract containing an arbitration clause exists. Thus, Samsara has a likelihood of success on the merits. "A 'likelihood' [of success on the merits] does not mean more likely than not." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011). To meet the threshold for this factor, Samsara must show a "reasonable chance, or probability, of winning." *Id.* "How strong a claim on the merits is [] depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Here, Samsara can show both a reasonable chance of winning on the merits (*i.e.*, that contract formation is exclusively for the Court) and substantial irreparable harm should arbitration continue.

It is axiomatic that arbitration is a matter of agreement and parties must arbitrate only what they agreed to arbitrate. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986). Indeed, the Third and Ninth Circuits have consistently held that disputes as to the formation of a contract to arbitrate are the exclusive purview of the courts. *See, e.g.*, *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 144 (3d Cir. 2022) ("Courts have the authority to adjudicate formation challenges—***even if there is a delegation clause***—unless the parties have clearly and unmistakably referred formation issues to arbitration ***in a written contract whose formation is not in issue***."); *MZM Constr. Co. Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 401–02 (3d Cir. 2020) ("Consistent with the Supreme Court's repeated admonition that, at its core, 'arbitration is a matter of contract,' . . . we believe that the text of section 4 of the FAA—

7

mandating that the court be 'satisfied' that an arbitration agreement exists—tilts the scale in favor of a judicial forum when a party rightfully resists arbitration on grounds that it never agreed to arbitrate at all.") (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67–69 (2010)); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991) ("[A] party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. ***Only a court can make that decision***."); *see also Najarro v. Superior Ct.*, 70 Cal. App. 5th 871, 885–86 (2021), *as modified* (Oct. 22, 2021) ("***[C]laims of fraud in the execution of the entire agreement are not arbitrable under either state or federal law***. If the entire contract is void *ab initio* because of fraud, the parties have not agreed to arbitrate any controversy.").

Here, both parties agree there is a dispute as to contract formation. Motive repeatedly conceded and agreed in papers it filed in two separate tribunals that under Supreme Court precedent, the disputed contract formation issues must be resolved in the District of Delaware or at the ITC. *See, e.g.*, D.I. 42 at 1 ("The recent Supreme Court decision in *Coinbase, Inc. v. Suski*, 602 U.S. __ (2024), D.I. 41-1, as well as Motive's filing before the International Trade Commission (the 'ITC'), D.I. 41-2, simply reiterate what **both sides already agree: if there is an actual issue of contract formation, it must be decided by the court**."); Ex. 8 at 2 ("Contract formation and arbitrability are distinct queries; only the former can be decided here [in the ITC]."); *id.* ("Thus, the lone relevant issue the [ITC] may decide is contract formation."). Indeed, during the June 5, 2024 call with the Arbitrator, Motive again agreed that the Court must decide contract formation, and merely asked that the Arbitrator consider arbitrability in parallel. A. Boloori Decl. ¶¶ 20–21. Thus, while Motive argues that a contract was formed, it clearly and unequivocally agreed the parties' dispute on that issue must be decided in court (or the ITC), not in arbitration.

While the Arbitral Order purports to decide the contract formation issue, it ignores clear Supreme Court, Third Circuit, and Ninth Circuit precedent establishing that the issue of contract formation is in the court's exclusive jurisdiction (and ignores Motive's concession of the same). Instead, the Arbitral Order incorrectly focuses on the language of the TOS's incorporation of JAMS Rules. Although not quoted in the TOS, JAMS Rules state that "disputes over the formation, existence, validity, interpretation or scope of the agreement . . . shall be submitted to and ruled on by the Arbitrator." Ex. 13 at 6. But only this Court has the authority to resolve contract formation disputes, even in the presence of such a delegation clause, because the dispute is over whether a valid container contract was formed in the first place. Without a valid container contract, there is no operative delegation clause to begin with; thus, a court, not an arbitrator, must resolve the container contract's formation irrespective of any such delegation clause. *See Zirpoli*, 48 F.4th at 144 ("Courts have the authority to adjudicate formation challenges—even if there is a delegation clause . . . ."). The Arbitral Order thus disregards this Court's exclusive authority to resolve the issue of contract formation.

Samsara is likely to succeed in showing that the issue of contract formation is one for this Court, and not the Arbitrator, to decide. Because Samsara is likely to succeed on this issue, a preliminary injunction is warranted to prevent Motive from proceeding with the arbitration at least until this Court decides the issue of contract formation. Notably, Samsara need not show that it is likely to succeed on the merits of contract formation (*i.e.*, that a valid contract to arbitrate was not formed due to Motive's fraud), just that the issue of contract formation is for the Court to decide. *See Morgan Keegan & Co., Inc. v. Louise Silverman Tr.*, No. 11-2533, 2012 WL 113400, at *2 n.3 (D. Md. Jan. 12, 2012) (explaining that "likelihood of success on the merits" is the likelihood that the moving party will succeed on the dispute at issue in the preliminary injunction, not the

underlying claims); *Thomas Glob. Grp., LLC v. Watkins*, No. 13-04864, 2014 WL 1371719, at *4, 7–8 (D.N.J. Apr. 8, 2014) (not requiring a showing of likelihood of success on the merits "where all the Plaintiff asks is to have this Court halt or stay an improvidently initiated arbitration proceeding"). Further, "the burdens at the preliminary injunction stage track the burdens at trial," *Stein v. Lee Eye Ctr., Inc.*, No. 2:21-cv-01730, 2021 WL 5770212, at *2 (W.D. Pa. Dec. 6, 2021), and the burden is on Motive—not Samsara—to prove "(1) an enforceable agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kipp v. Weyerhauser Co.*, 354 F. Supp. 3d 622, 625–26 (E.D. Pa. 2018) (citing *MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 734 (E.D. Pa. 2013) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009))). Here, the merits of Samsara's allegations regarding Motive's fraud go to the underlying dispute, not the question of whether this Court should decide the contract formation question.

But even if the Court were to consider the merits of the underlying dispute, Samsara is likely to succeed in showing that (a) the parties never formed a valid contract containing an arbitration clause due to Motive's fraud and (b) even if a valid agreement had been formed, it does not cover all of the claims Samsara is asserting here (and certainly not Samsara's patent infringement and false advertising claims that do not depend in any way on Motive's fraudulent access and use of Samsara's products). Both Delaware and California law make clear that a valid contract requires mutual assent. *See Grasso v. First USA Bank*, 713 A.2d 304, 308 (Del. Super. Ct. 1998); Cal. Civ. Code § 1550; *Snow v. Eventbrite, Inc.*, No. 3:20-cv-03698, 2021 WL 3931995, at *2 (N.D. Cal. Sept. 2, 2021). As the Amended Complaint alleges, Samsara consented only to non-competitors accessing its platform, and any access by Motive (indisputably a competitor) was procured through fraud rather than agreement. *See, e.g.*, D.I. 23 ¶ 50. Indeed, the TOS states that

a user "***may not use the Products if you are our direct competitor***, as determined in our sole discretion, except with our prior written consent." TOS § 2. There can be no mutual assent between Samsara and a Motive employee where that employee knowingly concealed his/her identity as a competitor and instead purported to work for a fake company. Even though Motive's employees were able to create accounts, they are a class of individuals "not authorized to access and/or use the Products" and thus "shall not access or use the Products." *Id.* And, to Samsara's knowledge, any alleged contract would at most have been between Samsara and the fake company named by the Motive employee, not with Motive.

Case law makes clear that fraud in the execution arises where a misrepresentation occurs as to the contract's "purport or content," or where a party executed the agreement "with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms by reason of 'excusable ignorance'"—ignorance that may arise through the other party's "affirmative intent to defraud." *MZM*, 974 F.3d at 403–04. Such fraud in the execution precludes contract formation. *Id.*; *see also Rosencrans v. Dover Images, Ltd.*, 192 Cal. App. 4th 1072, 1080 (2011) ("'Fraud in the execution' means that the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all; since mutual assent is lacking, the contract is void."). The use by Motive employees of fake companies and identities to disguise their attempts to access and reverse-engineer Samsara's platform fundamentally alters Samsara's position *vis-à-vis* the TOS. Samsara did not assent to contract with Motive under the TOS.

Further, even if a valid agreement between the parties were found to exist, Samsara's patent infringement and false advertising claims do not fall within the scope of the TOS. The TOS limit arbitrable claims to those that "aris[e] from or relat[e]" to the Terms or legitimate customers' use

11

of Samsara's products under the Terms. Courts interpret this phrase as requiring a "direct" or at least "significant" relationship between a claim and the agreement. *See TRUSTID, Inc. v. Next Caller, Inc.*, No. 18-172, 2018 WL 6242493, at *3 (D. Del. Nov. 26, 2018), *report and recommendation adopted*, No. 18-172, 2019 WL 1324948 (D. Del. Mar. 25, 2019); *United States ex rel. Welch v. My Left Foot Childs. Therapy, LLC*, 871 F.3d 791, 798 (9th Cir. 2017) ("'arising out of' and 'related to,' mark a boundary by indicating some direct relationship"); *Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-cv-02848, 2018 WL 4501146, at *2 (N.D. Cal. Sept. 18, 2018). Samsara's patent infringement and false-advertising claims lack any such "significant relationship" with the TOS or any authorized use of Samsara's products. No element of those claims depends on interpreting or applying the TOS, resolving any "dispute" over whether any use was unauthorized under the TOS, or addressing any other "dispute" that arises from or relates to the TOS or any "use" of Samsara products under the TOS. In fact, the ITC rejected Motive's attempt to arbitrate Samsara's patent infringement claims, finding "there is no valid agreement" that relates to those claims. Ex. 9 at 7. Thus, at least one tribunal already determined, prior to the Arbitral Order, that claims in Motive's Demand for Arbitration are not arbitrable because they are outside the scope of the asserted arbitration clause—regardless of whether a valid contract was formed.

## 2.     Samsara Will Suffer Irreparable Harm If Arbitration Proceeds

As the Third Circuit has recognized, a litigant in Samsara's position would be *per se* irreparably harmed if forced to arbitrate a matter it did not agree to arbitrate. "[T]he harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine an arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority." *PaineWebber*, 921 F.2d at 515; *see also Am. Life*, 25 F. Supp. 2d at 479 (enjoining arbitration and holding "[t]he Third Circuit

recognizes a party is irreparably harmed as a matter of law if forced to arbitrate a matter that it has not agreed to arbitrate."); *Morgan Keegan*, 2012 WL 113400, at *5 ("Courts have held that the harm suffered by an individual who is forced to arbitrate claims it did not agree to arbitrate is per se irreparable because it forces an individual to expend resources it cannot later recover."); *Greerwalker LLP v. Jackson*, No. 3:16-cv-235, 206 WL 3770954, at *5 (W.D.N.C. July 14, 2016) ("[F]orcing a party to defend an arbitration complaint when it never agreed to do so constitutes irreparable harm *per se*.").   Not only would Samsara be forced to arbitrate a matter it did not agree to arbitrate, but it would be deprived of the opportunity to resolve its claims against Motive in federal court, before a jury.   *See Morgan Keegan*, 2012 WL 113400, at *5 ("[A]llowing the arbitration to continue would deprive [plaintiff] of the opportunity to adjudicate defendants' claims in a court of law."); *Ohio River Valley Assoc. LLC v. PST Servs., Inc.*, No. 3:17-cv-00628, 2018 WL 773424, at *5 (W.D. Ky. Feb. 7, 2018) ("[F]orcing [plaintiff] to arbitrate claims which it has not agreed to arbitrate would necessarily deprive it of its constitutional right to a jury trial.").   And if the arbitration were to proceed, Samsara would bear not only the expense of litigating (which is significant, given the Arbitrator's fees exceed $10,000 per day), but the possibility of inconsistent judgments regarding contract formation, arbitrability, and the merits of its patent infringement and false advertising claims.   *Morgan Keegan*, 2012 WL 113400, at *5.   Samsara did not want to burden this Court with yet another filing regarding an issue that was already pending before it.   So, Samsara zealously objected to the Arbitrator proceeding substantively, past the early procedural requirements under the JAMS Rules, and presented the Arbitrator with the clear authority that requires the court, not the arbitrator, to decide contract formation.   As soon as it became clear (through the Arbitral Order and the subsequent correspondence to schedule an arbitral conference) that the Arbitrator was choosing to proceed to the substance of the arbitration despite that authority,

Samsara immediately prepared and filed the instant motion seeking emergency relief from the irreparable injury the Arbitral Order and further arbitration proceedings will cause.

### 3. Motive Will Not Suffer Irreparable Harm If It Is Enjoined from Proceeding with Arbitration

Motive would not be harmed if temporarily enjoined from arbitrating any arbitrable disputes (assuming any exist) pending this Court's decision on contract formation. This Court has previously found a party "will not be harmed if temporarily enjoined from arbitrating disputes." *Am. Life*, 25 F. Supp. 2d at 479. The only harm Motive might suffer is a short delay of the pending arbitration. *Morgan Keegan*, 2012 WL 113400, at *5; *Greerwalker*, 2016 WL 3770954, at *5. In comparison, Samsara faces constitutional harm and significant expense if it is forced to arbitrate its affirmative claims against Motive that it never agreed to arbitrate.

### 4. The Public Interest Favors a Preliminary Injunction

The law is clear: a party cannot be forced to arbitrate a matter it has not agreed to arbitrate. *AT&T Techs.*, 475 U.S. at 648–49. Moreover, "[a]llowing arbitrators to decide whether the parties agreed to submit a dispute to arbitration absent express agreement by the parties to this effect goes against 'the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration . . . .'" *Am. Life*, 25 F. Supp. 2d at 479 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)) (finding it is in the public interest to issue a preliminary injunction to prevent arbitration). Denying access to the federal courts and forcing arbitration in the absence of an agreement to do so "disincentivizes arbitration and lowers the public's confidence in arbitration as an avenue for dispute resolution." *Morgan Keegan*, 2012 WL 113400, at *6; *see also Hospira Inc. v. Therabel Pharma N.V.*, No. 12 C 8544, 2013 WL 3811488, at *16 (N.D. Ill. July 19, 2013) ("[T]he denial of an injunction will signal to nonparties who find themselves in a similar position as [plaintiff] that their access to the courts is limited. . . . [T]he

public interest is not served by needlessly barring access to the courts."). Delaying the arbitration also "serves the public interest by preventing an unnecessary use of time and resources on what might ultimately prove to be an unauthorized arbitration." *Morgan Keegan*, 2012 WL 113400, at *6. A preliminary injunction in this case furthers the public interest and aligns with the legal limits to an arbitrator's power.

**B.      Samsara's "Participation" in the Arbitration Does Not Constitute Waiver**

Motive has separately asserted Samsara somehow waived its jurisdictional objections to the arbitration. D.I. 46 at 2. But Motive is wrong, and JAMS already confirmed that Samsara's objections to jurisdiction were preserved until a duly appointed arbitrator addressed them. Ex. 15 ("Respondent [Samsara] may raise its objections with the arbitrator upon his or her appointment. Respondent may participate in the arbitrator selection process without waiving any objection stated to date."). And after arbitrator selection, Samsara's participation in the arbitration has always been subject to its jurisdictional objections, and has been limited to complying with the early JAMS procedures and deadlines, all to avoid Motive's arguments in the arbitration that Samsara would be waiving rights and objections by not complying with the JAMS deadlines. There was no need for Samsara to burden this Court with a motion to enjoin at that time because Motive's motion to transfer or dismiss was already pending, and that motion already required the Court to address the threshold contract formation and arbitrability issues. Samsara therefore expressly and repeatedly preserved its objection to arbitral jurisdiction, notified JAMS that Samsara would seek to enjoin the arbitration if an assigned arbitrator elected to proceed, and ***never*** asked the arbitrator to rule on contract formation or arbitrability. Instead, Samsara clearly and explicitly asked JAMS and the Arbitrator not to substantively proceed with the arbitration or rule on any issues until after this Court decided contract formation issues, as the law requires.

15

It was not until the Arbitral Order issued that the Arbitrator clarified that his intention to proceed despite Samsara's jurisdictional objection.  Samsara immediately sought reconsideration of that incorrect ruling, while proceeding in parallel to file this motion to enjoin.  Ex. 14.  Samsara also asked the Arbitrator to wait to hold any further proceedings or conferences until after this Court rules on Motive's pending motion or the instant motion for injunction, whichever comes first.  *Id.*  But the Arbitrator thereafter requested that the parties appear for a conference call, thus confirming that the instant motion is urgently necessary to avoid further prejudice to Samsara.  Ex. 1.

Motive claims Samsara has waived its objections to arbitration because "Samsara has written several letters to JAMS…arguing its positions regarding contract formation and arbitrability…"  D.I. 46 at 2.  That is blatantly misleading.  In each of these letters, Samsara was not asking the arbitrator to decide such issues, it was explaining why it objected to the Arbitrator's jurisdiction to resolve any of them.  *See* Ex. 16 at 2 (March 14, 2024, letter stating "Samsara submits that any arbitration based on Motive's current Arbitration Demand cannot commence unless and until the Court in the Delaware litigation first determines whether or not Samsara's claims in the Amended Complaint are subject to arbitration, including on the issue of arbitrability"); Ex. 10 at 3 (April 10, 2024, letter from Samsara stating "JAMS must wait for the Delaware Court to rule on the Pending Motion and to resolve threshold jurisdictional issues concerning contract formation and arbitrability"); Ex. 11 at 5 (April 17, 2024, letter stating "Samsara maintains its position that JAMS must wait to assign an arbitrator, and otherwise stay these proceedings, until . . . the Delaware Court resolves threshold issues that may result in determination that the parties have no agreement to arbitrate or that the claims in Samsara's Amended Complaint are not arbitrable"); Ex. 17 (May 22, 2024, email stating that "arbitration

cannot commence" until after this Court resolves the jurisdictional questions of contract formation). Motive also claims Samsara waived its objections by submitting its preliminary and contingent response and counterclaims to Motive's demand for arbitration. D.I. 46 at 2. But again, that was done only to meet the procedural deadlines in the JAMS Rules and avoid any waiver arguments Motive might make. The Contingent Response clearly states: "Samsara maintains ***and does not waive*** any of its rights or positions regarding the Terms of Service or its objections to arbitration or arbitrability." Ex. 12 at 7.

Upon arbitrator selection, Samsara immediately requested a call with the Arbitrator merely to determine whether or not he would proceed substantively so that Samsara could determine whether it would be necessary to file a motion to enjoin the arbitration in this Court. Obviously, if the Arbitrator intended to wait to proceed with arbitration (if at all) until after this Court ruled, there would have been no need to burden this Court with additional motion practice. Samsara never requested, nor has it ever stipulated to, the Arbitrator deciding contract formation. And Samsara never "argued" its position on contract formation and arbitrability at the June 5, 2024 conference before Judge Ware, as Motive asserts. A. Boloori Decl. ¶¶ 22–23. Instead, during that conference, Samsara repeated its prior position that the Arbitrator should not proceed to decide anything and should instead wait until this Court rules. *Id.*

Motive's assertion that Samsara did not request additional argument or otherwise object after the preliminary arbitration conference ignores that (1) Samsara's position was, and has always been, that the arbitrator should not rule on contract formation at all, let alone receive any arguments on that issue—a threshold point that had not yet been decided before the Arbitral Order issued, and (2) Samsara had already, extensively stated and preserved its objections to any such ruling by the Arbitrator.

Motive cites the Arbitral Order, which states that "[t]he parties stipulated that the Arbitrator may determine those matters." *Id.* But Motive contorts the Arbitrator's statement. The Arbitral Order states that "[t]he parties stipulated that the Arbitrator may determine those matters ***based on their briefs submitted to the District Court***." While Samsara agreed to jointly submit the parties' briefing to the Arbitrator, Samsara ***never*** stipulated to the Arbitrator resolving any issues of contract formation or arbitrability. Boloori Decl. ¶¶ 21–24. Samsara has consistently maintained its position that the Arbitrator should not address or consider any of those issues until ***after*** this Court rules (if at all).

Motive relies heavily on *Daniel* to argue Samsara waived its objections to arbitration. D.I. 46 at 3. But in *Daniel*, the defendant did not object to arbitration until after he (1) attended a first arbitration hearing, (2) stated that he would appear at the arbitration, (3) attended a second arbitration hearing (i.e. a trial) and listened to all of the evidence presented by the opposing party, and (4) requested a continuance to secure witnesses and evidence. *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1356 (9th Cir. 1983). Only then did the defendant send a letter objecting to arbitration. *Id.* And only after the arbitrator reached its final decision on the merits of the arbitration did the defendant challenge the arbitration award in court. *Id.* at 1356–57. Here, Samsara has made it known that it objects to the arbitration at every step of the proceeding, which at this stage has not even begun to address threshold questions about how and when the arbitration will be conducted (if at all), determine how and when threshold arbitrability and other early motions will be decided, proceed to any discovery, let alone hold any evidentiary hearing. Thus, Samsara seeks judicial resolution of a jurisdictional issue at the ***outset*** of the arbitration, before it has commenced on the merits of any substantive claims.

Motive also cites *Smith* and *Nghiem*, but like *Daniel*, those cases are inapposite.  In *Smith*, the appellants did not object until after an unfavorable ruling, while Samsara has maintained its objections from the outset and expressly objected to the Arbitrator even before he reached his ruling.  *Law Offices of Richard E. Wilson, LLC v. Smith*, No. 21-17076, 2022 WL 16647769, at *1 (9th Cir. 2022).    And in *Nghiem*, a party that **initiated** arbitration attempted to object to arbitrability, and only after receiving an adverse ruling.  *Nghiem v. NEC Elecs., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994).  Here, Samsara did not initiate the arbitration and has consistently objected to the Arbitrator's authority to resolve the threshold issues of contract formation and arbitrability.

Motive claims Samsara "should have sought to enjoin the arbitration before it obtained an unfavorable result."  D.I. 46 at 4 (emphasis omitted).  But Samsara **did** seek to halt the arbitration earlier because the issue of whether Samsara's claims were subject to a valid arbitration clause was already pending before this Court.  Samsara hoped to avoid burdening the Court with another motion until it was clear that the Arbitrator would proceed with arbitration despite that already pending motion.  Samsara seeks an injunction now because the Arbitrator has exceeded his authority by purporting to determine the issue of contract formation and has clarified that he now intends to proceed with arbitration of Samsara's claims.  Motive argues that *BMH* shows Samsara needed to enjoin the arbitration before the Arbitral Order issued.  D.I. 46 at 4 (citing *Textile Unlimited, Inc. v. A..BMH & Co., Inc. ("BMH")*, 240 F.3d 781 (9th Cir. 2001)).  But the *BMH* decision actually supports **Samsara's** position.  In *BMH*, the buyer submitted a demand for arbitration for a defective shipment.  Three months after the arbitration organization received the demand, the seller filed an action to enjoin the arbitration.  *BMH* at 784.  A month later, the arbitrator found the case was arbitrable, and the seller moved to stay the arbitration.  *Id.*  The court found that the seller did **not** waive its objections to arbitration because the seller "only participated

in the arbitration to contest the arbitration itself." *Id.* at 788.  This is exactly what Samsara has done: it participated in the arbitration only to the extent necessary to comply with the procedural rules in the arbitration and avoid waiver while at every step Samsara contested that the Arbitrator had any authority to resolve the dispute.  Samsara has not waived any objections to the arbitration and timely filed this motion immediately after the Arbitrator confirmed he intends to proceed with the arbitration in contravention of controlling law that precludes the Arbitrator from taking such action.

## V.    CONCLUSION

Samsara has demonstrated (1) a substantial likelihood of success on the merits of its claim that the issue of contract formation is one for this Court; (2) it would suffer irreparable harm if compelled to arbitrate; (3) Motive would not suffer any irreparable harm from delaying any arbitration; and (4) granting a preliminary injunction is in the public interest.  Accordingly, Samsara respectfully requests that this Court enjoin Motive from pursuing resolution of Samsara's claims against it in arbitration.

OF COUNSEL:
Ellisen S. Turner, P.C.
Ali-Reza Boloori
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA  90067
(310) 552-4200

Joseph A. Loy, P.C.
Joshua L. Simmons, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Jeanne M. Heffernan, P.C.
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX  78701
(512) 678-9100

Dated: June 26, 2024

/s/ Emily S. DiBenedetto
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
Emily DiBenedetto (No. 6779)
Lindsey M. Gellar (No. 7202)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
(302) 298-0701
jshaw@shawkeller.com
kkeller@shawkeller.com
nhoeschen@shawkeller.com
edibenedetto@shawkeller.com
lgellar@shawkeller.com
*Attorneys for Plaintiff Samsara Inc.*

21